

**SIGNED this 26th day of November, 2014**

_____
Marcia Phillips Parsons
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

In re

    AMBER REEVES and                    No. 12-30893
    and JOSHUA REEVES,                Chapter 7

            Debtors.

## **MEMORANDUM**

APPEARANCES:

    Maurice K. Guinn, Esq.                  Dean B. Farmer, Esq.
    Gentry, Tipton & McLemore, PC       Hodges, Doughty & Carson, PLLC
    Post Office Box 1990                    Post Office Box 869
    Knoxville, Tennessee 37901           Knoxville, Tennessee 37901
    *Attorney for Debtors*                   *Attorney for Chapter 7 Trustee*

**Marcia Phillips Parsons, Chief United States Bankruptcy Judge.** This chapter 7 case is before the court on the Trustee's objections to the Debtors' exemptions claimed in proceeds from the settlement of the Debtor Joshua Reeves' pre-petition automobile accident. The primary issue in dispute is whether the settlement proceeds paid under the Debtors' uninsured motorist coverage[1] can be exempted by them under Tenn. Code Ann. § 26-2-110, which provides an exemption for benefits paid under contracts of accident, health, or disability insurance insuring the assured against loss by reason of accidental personal injuries. A preliminary issue is whether the court's prior order approving the settlement and authorizing certain disbursements from that settlement, including $15,000 to the Debtors in payment of their personal bodily injury exemption under Tenn. Code Ann. § 26-2-111(2)(B), precludes the Debtors under the principles of res judicata and collateral estoppel from claiming additional exemptions. Lastly, if not precluded, may the Trustee now challenge the Debtors' exemption claim under Tenn. Code Ann. § 26-2-111(2)(B) as improper as to the Debtor Amber Reeves, despite the Trustee's failure to object to that exemption within the 30-day period required by Fed. R. Bank. P. 4003(b)(1)? For the following reasons, the Trustee's objections will be overruled except as to the amount that may be exempted by the Debtors under Tenn. Code Ann. § 26-2-110. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(B).

I.

The pertinent facts were provided by stipulations filed by the parties on October 15, 2014, and from a brief evidentiary hearing that followed on October 20, 2014. Debtor Joshua Reeves was involved in a motor vehicle accident with William Catlett on January 19, 2012, resulting in personal injuries to Mr. Reeves which caused him to undergo an anterior cervical discectomy and fusion for a herniated disc at C5-C6. Mr. Reeves continues to experience headaches, dizziness, and nerve pain that leave him unable to work, and he anticipates further surgery and medical expenses for which he has no health insurance.

At the time of the accident, Mr. Reeves and his wife Amber had already consulted a

---

[1] Uninsured motorist coverage in Tennessee encompasses both uninsured and underinsured motor vehicles. *See Seymour v. Sierra*, 98 S.W.3d 164, 166 (Tenn. App. 2002). Accordingly, the court will simply refer to the coverage as uninsured motorist.

bankruptcy attorney due to financial difficulties from Mrs. Reeves having been laid off from work. Approximately six weeks after the accident, the Reeves filed a joint voluntary petition commencing this chapter 7 bankruptcy case on February 29, 2012. Dean Farmer, Esq. was appointed chapter 7 trustee. Although the Debtors advised their initial bankruptcy attorney of the automobile accident prior to the bankruptcy filing, the accident was not disclosed in their original statements and schedules. The Debtors did inform the Trustee about the accident at their meeting of creditors. The Debtors were granted a discharge on June 8, 2012.

On October 10, 2012, the Debtors filed amended Schedules B and C, listing "Damages arising from Personal Injury Claim" as a joint asset with an unknown value in which they jointly claimed a $15,000 exemption pursuant to Tenn. Code Ann. § 26-2-111(2)(B), which provides an exemption of up to $7,500 for a payment on account of personal bodily injury. No objection to the Debtors' exemption claim was filed within the time provided by Fed. R. Bankr. P. 4003(b)(1).

By order December 11, 2012, the Trustee was granted permission to employ attorney Olen Haynes on behalf of the estate regarding Mr. Reeves' automobile accident with Mr. Catlett. Mr. Haynes commenced a state court action against Mr. Catlett on behalf of the Debtors and the Trustee, requesting judgment in the amount of $300,000 for personal injuries, medical expenses, lost wages, and lost earning capacity suffered by Mr. Reeves, and for loss of consortium sustained by Mrs. Reeves.

On April 30, 2014, the Trustee filed a motion to approve settlement of the state court litigation for $95,000. This amount represented all of the available automobile insurance coverage, specifically, liability coverage of $50,000 from Mr. Catlett's carrier Safeco Insurance Company and uninsured motorist coverage of $45,000 from the Debtors' carrier Mid-Century Insurance Company.[2] The Trustee also sought in his motion the authority to make certain disbursements from

---

[2]There was some disagreement as to the amount of the proceeds paid under uninsured motorist coverage. A release executed by the Debtors and the Trustee in connection with the settlement agreement recites that $50,000, "$5,000 in med-pay benefits and $45,000 in underinsured motorist benefits," was paid by Mid-Century Insurance. It was clarified at the hearing, however, that only $45,000 came into the estate from Mid-Century because it had withheld $5,000 in
(continued...)

3

the $95,000 once the settlement was approved. There was no opposition to the motion, and an order was entered on May 27, 2014, approving the settlement and authorizing the Trustee to make the following disbursements: $31,666.67 and $3,874.82 to Mr. Haynes for his one-third contingency attorney fee and reimbursement of his expenses, respectively; $8,903.46 to North Carolina Medicaid, $1,068.00 to LeConte Medical Center and $1,578.50 to Carolina Spine & Neurosurgery Center, all for medical services rendered; and $15,000 to the Debtors for their exemption claim pursuant to Tenn. Code Ann. § 26-2-111(2)(B). No provision was included regarding the disposition of the remaining balance of the proceeds, although the order did recite, as the Trustee had in his motion, that the "residual proceeds to the Estate are approximately $32,000."

The Trustee made the authorized disbursements. Thereafter, the Debtors retained new bankruptcy counsel. On August 21, 2014, the Debtors filed second amended Schedules B and C, changing the value of the asset "Damages arising from Personal Injury Claim" from unknown to $95,000 and adding two new exemption claims in the asset: one in the amount of $8,529.46 pursuant to Tenn. Code Ann. § 26-2-103, the general personal property exemption statute, and the other in the amount of $26,454.28 pursuant to Tenn. Code Ann. § 26-2-110, which exempts sums payable under "any contracts of accident, health, or disability insurance insuring the assured against loss by reason of accidental person injuries . . . ."

This time the Trustee challenged the exemptions. In objections filed August 26, 2014, the Trustee asserted that the Debtors' Tenn. Code Ann. § 26-2-103 exemption was improper because a chose in action is not personal property that may be exempted under the statute and the exemption under Tenn. Code Ann. § 26-2-110 is inapplicable because the settlement proceeds did not constitute an insurance payment for accident, health, or disability insurance resulting from accidental personal injury as contemplated by the statute. Thereafter, the Trustee filed on September 9, 2014, an omnibus amended objection, incorporating his prior objections and adding a third, that the Debtors' prior $15,000 exemption claim under Tenn. Code Ann. § 26-2-111(2)(B) should be limited to $7,500 for Mr. Reeves only because Mrs. Reeves' claim for loss of consortium does not constitute personal

---

[2](...continued)
subrogation of the med pay portion of the Debtors' automobile policy that previously had been expended in payment of some of Mr. Reeves' medical bills from the accident.

4

bodily injury under the statute. *See In re Chapman*, 424 B.R. 823 (Bankr. E.D. Tenn. 2010). Because the Debtors have already received payment of $15,000, the Trustee requested that $7,500 be credited against any additional funds to which the Debtors may be entitled.

In the Trustee's subsequently filed memorandum of law, he raised the legal argument that the court's May 27, 2014 order approving the settlement and authorizing certain disbursements, including payment of $15,000 to the Debtors, precluded them from claiming additional exemptions under the doctrines of res judicata and collateral estoppel. The Trustee also stated that if he did not prevail on this preclusion issue or on his argument that $7,500 should be credited against any additional exemption claims, the exemption of $8,529.46 pursuant to Tenn. Code Ann. § 26-2-103 would be proper. Accordingly, the court deems the Trustee's objection to this exemption claim as withdrawn, except to the extent the claim is precluded or otherwise reduced by the prior payment to the Debtors.

II.

The filing of a bankruptcy petition creates an estate consisting of "all legal and equitable interests of the debtor in property as of the commencement of the case," with certain enumerated exceptions. 11 U.S.C. § 541. The definition is intended to be broad and includes potential personal injury claims arising from a prepetition automobile accident regardless of whether the claim has been liquidated or legal action commenced prior to the date the petition was filed. *See Crocker v. Calderon (In re Calderon)*, 363 B.R. 537, 540-41 (Bankr. M.D. Tenn. 2003). To ensure that a debtor retains "sufficient property to obtain a fresh start," a debtor is permitted to claim certain property as exempt such that it "is subtracted from the bankruptcy estate and not distributed to creditors." *In re Arwood*, 289 B.R. 889, 892 (Bankr. E.D. Tenn. 2003). *See also Schwab v. Reilly*, 560 U.S. 770, 791, 130 S. Ct. 2652 (2010) ("to help the debtor obtain a fresh start, the Bankruptcy Code permits him to withdraw from the estate certain interests in property"). Section 522 of the Bankruptcy Code provides that a debtor may exempt certain items of property by filing "a list of property that the debtor claims as exempt under subsection (b) of this section." 11 U.S.C. § 522(l). Because Tennessee has opted out of the federal scheme of exemptions as permitted by § 522(b)(1), the Debtors are limited to the exemptions provided by Tennessee law. There is a "long-standing

5

rule" in Tennessee that its exemption statutes are to be liberally construed. *In re Hogue*, 286 S.W.3d 890, 894 (Tenn. 2009).

Objections to claimed exemptions must be filed "within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." Fed. R. Bankr. P. 4003(b)(1). The objecting party bears the burden of proof by a preponderance of the evidence that the exemptions have been improperly claimed. *See* Fed. R. Bankr. P. 4003(c); *In re Chapman*, 424 B.R. at 826. Absent objection, "the property claimed as exempt on such list is exempt." 11 U.S.C. § 522(l). In other words, once the Fed. R. Bankr. R. 4003(b) deadline has passed, the exemption is final and may not be contested by a party in interest, even if the debtor lacked a colorable statutory basis for claiming the exemption. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 643-44, 112 S. Ct. 1644 (1992).

### III.

A. <u>Does the court's May 27, 2014 order approving the settlement and authorizing disbursement to the Debtors of $15,000 in payment of their Tenn. Code Ann. § 26-2-111(2)(B) exemption preclude the Debtors under the principles of res judicata and collateral estoppel from amending their Schedule C to claim additional exemptions in the balance of the $95,000 settlement?</u>

Res judicata, which "promote[s] the finality of judgments," *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992), extinguishes "all rights of the plaintiff to remedies against the defendant with respect to all or any part or the transaction, or series of connected transactions, out of which the action arose." *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 215 (6th Cir. 1996) (quoting Restatement (Second) Judgments § 24 (1982)). "The general rule of claim preclusion, or true res judicata, is that a valid and final judgment on a claim precludes a second action on that claim or any part of it. Claim preclusion applies not only to bar the parties from relitigating issues that were *actually* litigated but also to bar them from relitigating issues that *could have been raised* in an earlier action." *J.Z.G. Res., Inc.*, 84 F.3d at 214 (emphasis in original).

> "A claim is barred by res judicata effect of prior litigation if all the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been

6

litigated in the prior action; and (4) an identity of the causes of action."
*Browning v. Levy*, 283 F.3d 761, 771-72 (6th Cir. 2002) (quoting *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)).

Collateral estoppel, or issue preclusion, is an extension of res judicata, the purpose of which is to relieve the parties of multiple lawsuits, conserve judicial resources, and promote finality by preventing inconsistent decisions. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411 (1980); *see also Montana v. United States*, 440 U.S. 99, 153, S. Ct. 970 (1979) ("once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation").

> "[T]he doctrine of collateral estoppel applies when: (1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation; (2) the issue was actually litigated and decided in the prior action; (3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation; (4) the party to be estopped was a party to the prior litigation (or in privity with such a party); and (5) the party to be estopped had a full and fair opportunity to litigate the issue."

*Santana-Albarran v. Ashcroft*, 393 F.3d 699, 704 (6th Cir. 2005).

In light of these principles, the Trustee contends that the May 27, 2014 order authorizing settlement of the automobile accident litigation and certain distributions from that settlement was a final order, such that the Debtors are barred from making any additional exemption claims. The Trustee argues that to conclude otherwise would prejudice the creditors who relied on the Debtors' $15,000 exemption and the balance that would be available to creditors in not objecting to the proposed settlement and disbursements.[3] The Debtors respond that in claiming the additional exemptions, they are not seeking to dispute any issue resolved by the May 27, 2014 order, which did not prohibit further exemption claims by the Debtors. Moreover, the Debtors note that Fed. R. Bankr. P. 1009 permits them to amend their exemptions at any time prior to the closing of their

---

[3] The court observes that although the Debtors provided notice to all their creditors of their claims of additional exemptions in the remaining settlement proceeds, none objected or otherwise responded that they were prejudiced by the additional exemptions.

7

bankruptcy case.[4]

The May 27, 2014 order approving the settlement is certainly a final order. *See Will v. Northwestern University (In re Nutraquest, Inc.)*, 434 F.3d 639, 643-44 (3d Cir. 2006) (order approving settlement pursuant to Fed. R. Bankr. P. 9019(a) is final). An order approving compromise and settlement under Fed. R. Bankr. P. 9019 has the same res judicata effect as any other final order with respect to the subject matter of the order.[5] *See Bezanson v. Bayside Enters., Inc. (In re Medomak Canning)*, 922 F.2d 895, 900 (1st Cir. 1990) ("Generally, a court-approved settlement receives the same res judicata effect as a litigated judgment . . . ."); *Chattley v. Stone (In re Chattley)*, Adv. No. 06-5011, 2007 WL 1159966, at *4 (Bankr. S.D. Tex. Apr. 16, 2007) ("Res judicata applies where the parties to a settlement objectively manifest an intent to cement their agreement with claim preclusion."). Thus, the order approving the $95,000 settlement of the state court automobile accident litigation involving Mr. Catlett, the Debtors and the Trustee on behalf of the bankruptcy estate is final such that res judicata would prevent the parties and their privies from relitigating the issues that were or could have been litigated in that action.

Nevertheless, the Debtors are not prevented by either claim or issue preclusion from adding new exemptions in the approximately $32,000 in proceeds remaining after disbursements were made in accordance with the May 27, 2014 order. The order did not address distribution of the remaining proceeds, much less did it direct that the remaining proceeds be paid to creditors. Rather, the only statement in the order regarding the excess was that "[t]he Trustee anticipates the residual proceeds to the Estate to be approximately $32,000.00." This anticipation by the Trustee falls far short of a directive by the court that the residual proceeds remain in the estate solely for distribution to creditors. Similarly, the May 27, 2014 order did not address whether the Debtors were entitled to other exemptions. The mere adjudication that the Trustee was authorized to distribute $15,000 to the Debtors in payment of their then existing exemption claim to which no objection had been made

---

[4] Rule 1009 provides a general right to amend, stating in material part that "[a] . . . schedule . . . may be amended by the debtor as a matter of course at any time before the case is closed." Fed. R. Bankr. P. 1009(a).

[5] Rule 9019 states, in part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

does not, *ipso facto*, preclude the assertion of other exemption claims. Because the issue of entitlement to the residual proceeds or the Debtors' possible exemptions in these residual proceeds was not litigated or even raised by the Trustee in his motion to approve the settlement, the Debtors are not barred by res judicata or collateral estoppel from claiming additional exemptions. *See, e.g., Capmark Fin. Grp., Inc. v. Goldman Sachs Credit Partners, L.P.*, No. 11 Civ 7511, 2012 WL 698134, at *8 (S.D.N.Y. Mar. 5, 2012) (stating that res judicata and collateral estoppel did not apply when the settlement did not address insider preference claims and none of the issues necessary to approve the settlement were identical to the issues raised in that action).

B. <u>May that portion of the settlement proceeds paid under the Debtors' uninsured motorist coverage be claimed by the Debtors as exempt pursuant to Tenn. Code Ann. § 26-2-110, which provides an exemption for benefits paid under contracts of accident, health, or disability insurance insuring the assured against loss by reason of accidental personal injuries or physical disability resulting from disease?</u>

The exemption provided by Tenn. Code Ann. § 26-2-110 entitled "Insurance; benefits," states as follows:

> (a) There shall be exempt from the claims of all creditors, and from execution, attachment, or garnishment, any sum or sums of money which may hereafter become due and payable to any person, who is a resident and citizen of this state, from any insurance company or other insurer, under the terms and provisions of any contracts of accident, health, or disability insurance insuring the assured against loss by reason of accidental personal injuries, or insuring the assured against loss by reason of physical disability resulting from disease.

Tenn. Code Ann. § 26-2-110(a). In *Thompkins*, the Bankruptcy Court for the Western District of Tennessee, speaking through now retired Judge William Houston Brown, held that "a debtor's uninsured motorist coverage would be considered accident insurance covering the debtor as the assured" under § 26-2-110(a). *In re Thompkins*, 263 B.R. 223, 226 (Bankr. W.D. Tenn. 2001). Judge Brown also concluded that due to the contractual nature of uninsured motorist policies, "the accident insurance exemption allowed to Tennessee residents by Tenn. Code Ann. § 26-2-110 may be in addition to the personal bodily injury exemption allowed by § 26-2-111." *Id.* at 227.

Citing *Thompkins, inter alia,* the Supreme Court of New Mexico, upon certification from the

United States District Court for the District of New Mexico, also concluded that an uninsured motorist policy falls within the scope of its state exemption for accident policies:

> We do not find it a far stretch of logic to conclude that a policy which provides insurance coverage specifically for accidents be deemed an "accident" policy. Nor are we persuaded that this construction of the statute creates an exemption for which the statute does not provide, as argued by Trustee. The plain language of the statute facially provides an exemption for the debtor who is the beneficiary of proceeds from an accident policy; uninsured motorist policy proceeds are the contractual benefits for which the insured has paid in the event of an accident with an uninsured driver.

*In re Portal*, 45 P.3d 891, 893-94 (N.M. 2002). And even before *Thompkins*, the Bankruptcy Court for the Western District of Texas reached the same conclusion regarding an exemption for uninsured motorist coverage under a Texas accident insurance statute in the face of a similar objection by a trustee in bankruptcy. *See In re Hosek*, 124 B.R. 239 (Bankr. W.D. Tex. 1991). As stated by the court:

> [T]he benefits here in question are exempt, as they are precisely payments made on the occurrence of a future contingency for which the insured and the insurance carrier contracted. The debtors contracted for protection against not being able to recover against another driver's liability coverage. Upon the occurrence of that eventuality, they have a right to receive the payments here in question under their policy. The fact that this type of coverage was not specifically mentioned in the statute is of no moment whatsoever.

*Id. at* 241 (footnote omitted).

Notwithstanding the foregoing authorities, which appear to be the only courts to have addressed the issue in published decisions, the Trustee argues that the Debtors may not exempt any portion of the uninsured motorist proceeds under Tenn. Code Ann. § 26-2-110. According to the Trustee, uninsured motorist insurance is not accident, health, or disability insurance as defined by the Tenn. Code Ann. § 56-2-201, which states, in material part, that

> "Accident and health insurance" means insurance against bodily injury, disablement or death, by accident or accidental means, or the expense of bodily injury, disablement or death, against disablement or expense resulting from sickness, and every insurance pertaining thereto; providing for the mental and emotional welfare of an individual and members of the individual's family by defraying the cost of legal services; or providing aggregate or excess stop-loss coverage in connection with employee welfare benefit plans, managed care organizations participating in commercial plans or the TennCare program, or both, health maintenance

  organizations, long-term care facilities, physician-hospital organizations as defined
  in § 56-32-102 and provider aggregate or per-patient stop-loss protection insurance
  coverage as authorized by § 56-32-104[.]

Tenn. Code Ann. § 56-2-201(1). In the Trustee's view, uninsured motorist insurance is a type of casualty insurance, providing coverage for negligent acts or omissions based on the concept of fault, while accident and health insurance is a form of contingency insurance that pays without regard to fault. As noted by the Trustee, casualty insurance under Tennessee law encompasses liability insurance, which is defined as "insurance against legal liability for the death, injury, or disability of any person, or for damage to property; and insurance of medical, hospital, surgical and funeral benefits to persons injured, regardless of legal liability of the insured, when issued as an incidental coverage with or supplemental to liability insurance." Tenn. Code Ann. § 56-2-201(2)(G).

  The Trustee also argues that allowing uninsured motorist proceeds to be exempt from the claims of creditors under the accident insurance exemption would create an impermissible conflict with the Tennessee's hospital lien statute, which grants a lien to a hospital that has provided care to an injured individual upon any cause of action or claim out of which the injuries arose. *See* Tenn. Code Ann. § 29-22-101.[6] The Trustee notes that in *Spivey v. Anderson*, No. 02A01-9704-CV-00075,

---

[6] Tennessee's hospital lien statute states as follows:

(a) Every person, firm, association, corporation, institution, or any governmental unit, including the state of Tennessee, any county or municipalities operating and maintaining a hospital in this state, shall have a lien for all reasonable and necessary charges for hospital care, treatment and maintenance of ill or injured persons upon any and all causes of action, suits, claims, counterclaims or demands accruing to the person to whom such care, treatment or maintenance was furnished, or accruing to the legal representatives of such person in the case of such person's death, on account of illness or injuries giving rise to such causes of action or claims and which necessitated such hospital care, treatment and maintenance.

(b) The hospital lien, however, shall not apply to any amount in excess of one third (1/3) of the damages obtained or recovered by such person by judgment, settlement or compromise rendered or entered into by such person or such person's legal representative by virtue of the cause of action accruing thereto.

(c) The lien herein created shall be subject and subordinate to any attorney's lien whether by contract, suit or judgment upon such claim or cause of action and shall not be applicable to accidents or injuries within the purview of the Tennessee

(continued...)

1997 WL 563199 (Tenn. App. Sept. 9, 1997), the Tennessee Court of Appeals held that this hospital lien statute enacted in 1970 trumped and implicitly repealed in part the older exemption in Tennessee's wrongful death statute, Tenn. Code Ann. § 20-5-106, which purportedly exempts wrongful death claims from the claims of all creditors. According to the Trustee, this same analysis should be applied here.

In support of the Trustee's arguments, he submits the deposition testimony of attorney John Thomas Johnson. Mr. Johnson is licensed in the State of Tennessee and specializes in insurance defense work, with forty years experience handling thousands of automobile litigation, including fifty or more uninsured motorist cases a year. According to Mr. Johnson, uninsured motorist claims are treated the same as any claim arising out of an automobile accident; it is a fault-based system, under which the policyholder is entitled to recover the amount of damages that he or she would be legally obligated to recover from the uninsured motorist. In contrast, states Mr. Johnson, accident and health insurance policies pay simply because there has been an accident, without regard to any issue of fault. Mr. Johnson stated that he disagrees with the *Thompkins* decision and its conclusion that uninsured motorist coverage is a type of accident insurance. In Mr. Johnson's opinion, uninsured motorist coverage "comes under the broad umbrella of casualty insurance, but in particular liability insurance. The coverage is acquired, if you choose it, when you purchase an automobile liability insurance policy." Mr. Johnson quoted from the Tennessee Court of Appeals decision in *Stallcup v. Duncan* that:

> The intent and purpose of the Uninsured Motorist Act is to provide protection by making the insurance carrier stand as the insurer of the uninsured motorist. Uninsured motorist insurance coverage is an adjunct to the automobile liability insurance policy. Thus, the insured is allowed to purchase uninsured motorist coverage for the protection that he would have had if the alleged tortfeasor had assumed his own financial responsibility by purchasing liability insurance.

684 S.W.2d 643, 646 (Tenn. App. 1984) (internal citations omitted). *See also Garrison v. Bickford*,

---

[6](...continued)
Workers' Compensation Law, compiled in title 50, chapter 6. Any such lien arising out of a motor vehicle accident shall not take priority over a mechanic's lien or prior recorded lien upon a motor vehicle involved in such accident.

Tenn. Code Ann. § 29-22-101.

377 S.W.3d 659, 666 (Tenn. 2012) ("In short, the purpose of § 56-7-1201(a) is to protect those who purchase motor vehicle liability insurance from those who do not."). Lastly, Mr. Johnson opined that uninsured motorist proceeds are subject to hospital liens, Medicare liens and TennCare liens, as well as any subrogation claims and attorney fees.

The Trustee's argument that uninsured motorist coverage is a type of casualty insurance has some statutory basis, since the coverage is provided as part of automobile liability insurance unless rejected in writing by the injured. Under Tennessee's Uninsured Motorist Coverage Act:

> (a) Every automobile liability insurance policy delivered, issued for delivery or renewed in this state, covering liability arising out of the ownership, maintenance, or use of any motor vehicle designed for use primarily on public roads and registered or principally garaged in this state, shall include uninsured motorist coverage, subject to provisions filed with and approved by the commissioner, for the protection of persons insured under the policy who are legally entitled to recover compensatory damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting from injury, sickness or disease.
>
> (1) The limits of the uninsured motorist coverage shall be equal to the bodily injury liability limits stated in the policy.
>
> (2) However, any named insured may reject in writing the uninsured motorist coverage completely or select lower limits of the coverage but not less than the minimum coverage limits in § 55-12-107. . . .

Tenn. Code Ann. § 56-7-1201(a). As the Tennessee Supreme Court has noted, the statute was enacted in 1967 as the result of "public concern over the increasing problem arising from property and personal injury damage inflicted by uninsured and financially irresponsible motorists." *Garrison v. Bickford*, 377 S.W.3d at 665. And as Mr. Johnson testified, there is an element of fault in payment of these proceeds. Generally speaking, unless the liability of the uninsured motorist is established, there is no liability of the insurance company providing the uninsured motorist coverage. *See Hickey v. Ins. Co. of North Am.*, 239 F. Supp 109, 111 (E.D. Tenn. 1965). Further, the insurer paying uninsured motorist coverage proceeds is subrogated to all of the rights of the person to whom payment is made. *See* Tenn. Code Ann. § 56-7-1204(a).

However, these attributes of uninsured motorist coverage do not necessarily preclude the Debtors' exemption claim under Tenn. Code Ann. § 26-2-110. The Tennessee Supreme Court has

13

instructed that in interpreting a Tennessee statute, "courts 'must (1) give these words their natural and ordinary meaning, (2) consider them in the context of the entire statute, and (3) presume that the General Assembly intended to give each of these words its full effect.'" *Garrison v. Bickford*, 377 S.W.3d at 663 (quoting *In re Estate of Trigg*, 368 S.W.3d 483, 490 (Tenn. 2012)). "[I[f the language used is unambiguous, we simply apply the plain meaning of the words used in the statute." *Id.*

Applying these directives to Tenn. Code Ann. § 26-2-110, the statute provides an exemption for "any sum or sums of money which may hereafter become due and payable to any person, who is a resident and citizen of this state, from any insurance company or other insurer, under the terms and provisions of *any contracts of accident, health, or disability insurance insuring the assured against loss by reason of accidental personal injuries . . . .*" Tenn. Code Ann. § 26-2-110(a) (emphasis added). As noted, the Bankruptcy Court for the Western District of Tennessee has concluded that uninsured motorist coverage is a contract of accident insurance within the meaning of this statute, with two other courts reaching similar conclusions under similar exemption statutes. Despite the Trustee's well-presented arguments, this court is unable to agree that these courts reached the wrong conclusion.

All of the courts applied a natural and ordinary meaning to the word "accident," concluding that the phrase "any contracts of accident insurance" would include uninsured motorist coverage since it is designed to protect the assured in the event of an automobile accident with an uninsured driver. This interpretation of accident is not inconsistent with the definition of accident and health insurance set forth in Tenn. Code Ann. § 56-2-201(1), which defines the term as "insurance against bodily injury, disablement or death, by accident or accidental means, or the expense of bodily injury, disablement or death, against disablement or expense resulting from sickness, and every insurance pertaining thereto . . . ." Moreover, this language is remarkably similar to the verbiage in the statute requiring uninsured motorist coverage, which states that it is "for the protection of persons insured under the policy who are legally entitled to recover compensatory damages from owners or operators of uninsured motor vehicles *because of bodily injury, sickness or disease, including death, resulting from injury, sickness or disease.*" Tenn. Code Ann. § 56-7-1201(a) (emphasis supplied). While the uninsured motorist statute does appear to limit this insurance coverage for bodily injury to only

14

specified persons, those who are legally entitled to recover compensatory damages from owners or operators of uninsured motor vehicles, nonetheless the insurance still falls within Tenn. Code Ann. § 56-2-201(1)'s inclusive phrase of "every insurance pertaining thereto [the expense of bodily injury etc.]." Thus, the plain meaning of the words in question supports the conclusion that the proceeds from uninsured motorist coverage fall within Tenn. Code Ann. § 26-2-110's exemption for accident insurance.

Contrary to the Trustee's argument, nothing in Tenn. Code Ann. § 26-2-110 provides that only those insurance proceeds not premised on "fault" fall within the accident exemption. Moreover, the fact that uninsured motorist coverage is provided in a policy of automobile liability insurance does not mandate a different result. As noted by the Trustee, the definition of vehicle insurance under Tennessee law encompasses two separate types of insurance: liability against loss to property or persons resulting from ownership of a vehicle on the one hand, and insurance against accidental death or injury caused by a vehicle on the other. *See* Tenn. Code Ann. § 56-2-201(7)(A) and (B).[7] The latter, medical payment coverage commonly called "med pay," is often included in an automobile policy in a relatively nominal amount. And notwithstanding their inclusion in automobile insurance policies or their classification as vehicle insurance, med pay proceeds are exempt under Tenn. Code Ann. § 26-2-110 as a type of accident and health insurance. *See In re Jennings' Estate*, 368 S.W.2d 289, 292 (Tenn. 1963). The court noted therein that "the liability coverage and medical coverage contained in the same policy constituted separate contracts," as

---

[7] This statute defines "vehicle insurance" as:

(A) . . . [I]insurance against loss of or damage to any land vehicle or aircraft or any draft or riding animal or to property while contained therein or thereon, or being loaded or unloaded therein or therefrom, and against any loss, expense or liability for loss or damage to persons or property resulting from or incident to ownership, maintenance, or use of the vehicle or aircraft or animal;

(B) Insurance against accidental death or accidental injury to individuals, including the named insured, while in, entering, alighting from, adjusting, repairing, cranking, or caused by being struck by a vehicle, aircraft, or draft or riding animal, if the insurance is issued as part of insurance on the vehicle, aircraft, or draft or riding animal, shall be deemed to be vehicle insurance.

Tenn. Code Ann. § 56-2-201(7)(A) and (B).

15

confirmed by the fact that an additional premium is charged for medical payments. *Id* at 291. Similarly, although uninsured motorist coverage is purchased in the same insurance policy as automobile liability coverage, the uninsured motorist coverage is a separate contract, subject to being rejected or accepted by an individual, with a separate premium. Thus, the uninsured motorist coverage stands and must be judged on its own.

Regarding the Trustee's argument that exempting uninsured motorist coverage proceeds under Tenn. Code Ann. § 26-2-110 would create an impermissible conflict with Tennessee's hospital lien statute, the court takes no position. The parties stipulated in this case that there were no unpaid medical bills, so payment of a hospital lien is not an issue in this case. And even if a hospital lien did exist, any tension between the two statutes could be reconciled by disallowing the exemption only to the extent of the lien as occurred in *Spivey v. Anderson*, 1997 WL 563199, at *4. Moreover, by statute, any hospital lien would be capped at one-third of the uninsured motorist coverage, *see Shelby County Health Care Corp. v. Baumgartner*, No. W2008-01771-COA-R3-CV, 2011 WL 303249, *10 (Tenn. App. Jan. 26, 2011) (citing Tenn. Code Ann. § 29-22-101(b)), thereby potentially leaving the remaining two-thirds for the insured's exemption claim. *Compare Washoe Med. Ctr. v. Reliance Ins. Co.*, 915 P.2d 288 (Nev. 1996) (hospital lien could not attach to insured patient's uninsured motorist benefits). Accordingly, the court concludes that the Debtors may exempt under Tenn. Code Ann. § 26-2-110 the proceeds from their uninsured motorist coverage policy.

C. <u>Despite the fact that the Trustee did not object to Debtors' exemption under Tenn. Code Ann. § 26-2-111(2)(B) within the 30-day period required by Fed. R. Bank. P. 4003(b)(1), may the Trustee now object to this exemption because of the additional exemptions claimed by the Debtors in the settlement proceeds?</u>

The Debtors first claimed their joint exemption in the asset "Damages arising from Personal Injury Claim" in their amended Schedule C filed on October 10, 2012. No objection to that exemption was filed until September 9, 2014, almost two years later, after the Debtors filed a second amended Schedule C on August 21, 2014, claiming additional exemptions in the asset. The Trustee agrees that under the 30-day objection period of Fed. R. Bankr. P. 4003(b)(1), trustees and other

16

parties in interest are generally barred from objecting to exemptions beyond the initial 30-day window after the exemption is first claimed. *See, e.g., In re Walker*, 505 B.R. 217 (Bankr. E.D. Tenn. 2014). Thus, in *Walker*, a decision by Judge Shelley Rucker of this court, a creditor who had failed to timely object to the debtors' claim of exemptions in some annuities, could not thereafter object to the annuities exemption when the debtors filed an amended schedule claiming a new exemption in unrelated property. The Trustee claims that *Walker* is distinguishable from the facts herein because the debtors' claimed exemptions, both old and new, arise from the same asset, the settlement proceeds from the state court lawsuit. Because the new exemptions affect the prior exemption, argues the Trustee, objections to the old exemption is now permitted.

In support of this argument, the Trustee cites to *Walker*, wherein the court approvingly quoted the following from the treatise *Collier on Bankruptcy*:

> If amendments to the list of exemptions or supplemental schedules are filed after the conclusion of the meeting of creditors, a later deadline comes in being. Rule 4003(b) protects possible objectors from being prejudiced by a late amendment by giving them 30 days from the date of the amendment to file objections. However, the new objections may go only to those exemptions *affected* by the amendment. The propriety of other exemptions previously finalized by the lack of a successful objection may not be reopened.

*Id.* at 221 (quoting 9 *Collier on Bankruptcy* ¶ 4003.03[1][a] (16th ed. 2013) (emphasis added). The "affected" statement in *Walker* is clarified somewhat by subsequent statements in the opinion:

> The debtor has a right to amend his schedule of exemptions up to the close of the case; *if he does and there is a change in a claim of exemption or another exemption claim is added*, the creditor will have another 30 days from the date of that amendment to object to the new exemption claim. . . . [This interpretation] gives a creditor its one chance to object to a claim of exemption. The later date for objections is there to provide an opportunity to creditors to object to exemptions regardless of when the exemption is claimed. Such an interpretation allows courts to grant a debtor's request to amend under Rule 1009 without denying a creditor its right to object to a previously unclaimed exemption.

*Id.* (emphasis added). In other words, an amendment "affects" a prior exemption if there is a specific change to a prior exemption. *Id.*

In the case at hand, while the Debtors have filed amendments to Schedule C, listing additional exemption claims in the "Damages arising from Personal Injury Claim" premised on

17

Tenn. Code Ann. § 26-2-103 and § 26-2-110, the Debtors did not make any change to their prior exemption claim. As previously discussed, their prior exemption was based on Tenn. Code Ann. § 26-2-111(2)(B), which provides an exemption for an individual's right to receive payment on account of personal bodily injury, not to exceed $7,500.[8] The Debtors jointly claimed $15,000 as exempt under this statute, or $7,500 each.

In *Schwab v. Reilly*, the Supreme Court held that when a statute defines an exemption as an interest in property up to a specified dollar amount, that dollar amount interest, rather than the item of property itself, is what is exempted from the bankruptcy estate, regardless of whether the amount claimed exempt by the debtor is equal to the full value of the property. *See Schwab v. Reilly*, 560 U.S. at 783-84. Stated differently, 11 U.S.C. § 522(l)'s "property claimed as exempt" is limited to the interest stated in the exemption statute. *Id.* Thus, in *Schwab*, where a debtor claimed an exemption in certain property pursuant to 11 U.S.C. § 522(d)(6), which permits a debtor to exempt his "aggregate interest, not to exceed $1,850 in value, in . . . tools of [his] trade," his exemption was limited to only a $1,850 interest in his tools of trade, even though he was seeking to exempt the tools themselves and believed that they had a total value of $1,850. Similarly, in *Gebhart*, when the debtor claimed an exemption under a state statute that provided for a homestead exemption in a specific dollar amount, the trustee's failure to object only resulted in that particular amount being

---

[8] This exemption states in pertinent part that:

In addition to the property exempt under § 26-2-103, the following shall be exempt from execution, seizure or attachment in the hands or possession of any person who is a bona fide citizen permanently residing in Tennessee:

. . . .

(2) The debtor's right not to exceed in the aggregate fifteen thousand dollars ($15,000) to receive or property that is traceable to:

. . . .

(B) A payment, not to exceed seven thousand five hundred dollars ($7,500) on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent[.]

Tenn. Code Ann. § 26-2-111(2)(B).

18

excluded from the estate, not the entire parcel of realty. *See In re Gebhart*, 621 F.3d 1206, 1211 (9th Cir. 2010); *see also In re Mwangi*, 764 F.3d 1168, 1175 (9th Cir. 2014) (look to text of statute to determine whether the statute exempts the asset or an interest therein).

In this case, Tenn. Code Ann. § 26-2-111(2)(B) provides an exemption in a debtor's right to receive "a payment, not to exceed seven thousand five hundred dollars ($7,500) on account of personal bodily injury . . . of the debtor or an individual of whom the debtor is a dependent." Consequently, the property exempted by the Debtors under the statute was $15,000 of the asset "Damages arising from Personal Injury Claim," and not the asset itself. The additional exemption claims of the Debtors, although in the balance of the $95,000 settlement, do not change or affect in any way their previously claimed exemption provided by Tenn. Code Ann. § 26-2-111(2)(B). Accordingly, "the propriety of [Mrs. Reeves' exemption claim under the statute] previously finalized by the lack of a successful objection may not be reopened." *In re Walker*, 505 B.R. at 221 (quoting *9 Collier on Bankruptcy* ¶ 4003.03[1][a]). The Trustee's attempts at a second chance to attack this exemption, either directly or by way of a set-off against the additional exemption claims, must be rejected. *See Taylor*, 503 U.S. at 643-44 (once the deadline has passed without an objection, the exemption is final, even if the debtor lacked a colorable statutory basis for claiming the exemption).

IV.

The only issue remaining is how much of the uninsured motorist coverage the Debtors may exempt under Tenn. Code Ann. § 26-2-110. They have claimed an exemption in the amount of $26,454.28. According to the parties' stipulations, the Debtors arrived at this number by totaling the disbursements made by the Trustee to the attorney and medical providers in the amount of $47,091.45 and then dividing that number by two for a quotient of $23,545.72. This quotient was then subtracted from the $50,000 purportedly paid by Mid-Century Insurance for uninsured motorist coverage, resulting in a difference of $26,454.28. In other words, the Debtors are seeking to exempt the proceeds from uninsured motorist coverage, less one-half the amounts paid to the attorney and medical providers.

The Trustee disagrees with this calculation because it does not account for the prior payment of $15,000 to the Debtors and because only $45,000, not $50,000, was paid into the estate from

19

uninsured motorist coverage. According to the Trustee, because only 47% of the total $95,000 settlement proceeds was from the Debtors' uninsured motorist coverage and because only $32,708 of the settlement proceeds remain after the May 27, 2014 ordered disbursements, the Debtors should be permitted to exempt only 47% of the $32,708 balance or $15,372.

The court agrees that the Trustee's method of calculation is the appropriate one. The Debtors did not claim their original $15,000 exemption under § 26-2-111(2)(B) in any certain portion of the insurance payments, but only in the asset "Damages arising from Personal Injury Claim." Furthermore, the insurance payments were never segregated either before or after the authorized disbursements. As a result, the court concludes that all of the prior authorized distributions must be deducted before the Debtors' additional exemptions may be claimed.

In conclusion, the Debtors' exemption under Tenn. Code Ann. § 26-2-110 for benefits paid under a contract of accident insurance is allowed for $15,372. Additionally, the Debtors' personal property exemption under Tenn. Code Ann. § 26-2-103 will be permitted in the claimed amount of $8,529.46, with no deduction for the prior exemption disbursement to the Debtors. The court will enter an order so ruling, and overruling the Trustee's objections to the extent that he contends otherwise.

# # #